UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RAYMOND F., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION** <br><br><br> Case No. 2:21-cv-00220 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Raymond F.[1] brought this action against Kilolo Kijakazi, Acting Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the denial of his application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (*See* Compl., Doc. No. 3.) The Administrative Law Judge ("ALJ") determined Mr. F. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 11–22, Doc. No. 15.) Based on a careful review of the entire record and the parties' briefs,[2] the court[3] affirms the Commissioner's decision.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] This order is based on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 10.)

1

STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision to determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). And the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). An

individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *see also id.* § 1382c(a)(3)(B).

In making a disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) the claimant has a severe medically determinable physical or mental impairment or combination of impairments;

3) the impairment or combination of impairments is equivalent to an impairment which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

4) the claimant has a residual functional capacity to perform past, relevant work; and

5) the claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of establishing disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

PROCEDURAL HISTORY

Mr. F. applied for Title II disability insurance benefits and Title XVI supplemental security income on October 9, 2018, alleging disability beginning on June 27, 2018. (*See* Tr. 11,

231, 238.) After a hearing, the ALJ issued a decision on June 22, 2020, finding Mr. F. was not disabled. (*Id.* at 11–22.)

At step two of the sequential evaluation, the ALJ found Mr. F. had the following severe impairments:

> traumatic brain injury (TBI) status post craniotomy with cognitive deficits; and mental impairments variously diagnosed as: neurocognitive disorder due to TBI; post-traumatic stress disorder; unspecified depressive disorder; bipolar I disorder with psychotic features; borderline personality disorder; generalized anxiety disorder; attention deficit-hyperactivity disorder; opioid dependence with opioid-induced mood disorder; opioid abuse; and narcotic addiction.

(*Id.* at 14.) At step three, the ALJ found Mr. F.'s impairments did not meet or equal the severity of an impairment listing. (*Id.* at 14–15.) The ALJ ultimately determined Mr. F. had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [H]e has the ability to understand, remember, and carry out simple, routine, and repetitive tasks; he can perform goal-oriented but not assembly line-paced work; he can occasionally interact with co-workers and supervisors; he can have brief and superficial interaction with the general public; and he can adapt to routine changes in the work place.

(*Id.* at 16.) Based on this residual functional capacity assessment, the ALJ found Mr. F. unable to perform any past relevant work. (*Id.* at 20–21.) But the ALJ determined Mr. F. was not disabled because, at step five, he found Mr. F. capable of performing other jobs existing in significant numbers in the national economy. (*Id.* at 21–22.) The Appeals Council denied Mr. F.'s request for review, (*id.* at 1), making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. F. raises a single claim of error: he argues the ALJ's mental residual functional capacity determination is unsupported by substantial evidence because the ALJ failed to properly

evaluate the medical opinion of his treating physician, Dr. Fred Civish, regarding his mental functioning.[4] (Opening Br. 1, 11–15, Doc. No. 18.)

The Social Security Administration implemented new regulations for evaluating medical evidence for claims, like Mr. F.'s, filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. §§ 404.1520c, 416.920c. Under these regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight," to any medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ assesses the persuasiveness of medical opinions by evaluating the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(b)–(c), 416.920c(b)–(c). Supportability and consistency are the most important factors the ALJ must consider—and the ALJ is required to explain how she considered these two factors. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, the ALJ examines how well medical sources support their own opinions with "objective medical evidence" and "supporting explanations." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, the ALJ considers whether the medical opinion is consistent with evidence from other medical and nonmedical sources in the record. *Id.* § 404.1520c(c)(2), 416.920c(c)(2).

While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting [her] decision, the ALJ also

---

[4] Dr. Civish also offered opinions regarding Mr. F.'s physical limitations, (Tr. 466–67), but Mr. F. does not challenge the ALJ's evaluation of these opinions. (*See generally* Opening Br., Doc. No. 18.)

5

must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010.

On October 28, 2018, Mr. F. was assaulted and suffered a traumatic brain injury ("TBI"). (*See* Tr. 17.) Ten days later, on November 7, 2018, Dr. Civish filled out a mental capacity assessment on a check-box form. (*Id.* at 463–65.) Under "diagnoses," Dr. Civish indicated Mr. F. had "traumatic brain injury, memory loss, [and] poor judgment, learning, and ability to do physical activity," and he stated Mr. F. would be "disabled for at least the next 4 months." (*Id.* at 463.) Dr. Civish opined Mr. F. had either "marked" or "extreme" limitations in nineteen of the twenty-two listed abilities. (*Id.* at 463–65.) These included marked and extreme limitations in all four broad categories of mental functioning: understanding, remembering, or applying information; concentration, persistence, or maintaining pace; adapting or managing oneself; and interacting with others. (*Id.*) On the narrative portion of the form, Dr. Civish explained Mr. F. had been in a coma, had undergone surgery for an epidural hematoma, and had suffered a severe concussion. (*Id.* at 465.) He stated Mr. F. was "still having severe daily headaches, memory loss, poor judgment, and general inability to do complex things." (*Id.*) He also indicated Mr. F. was not capable of managing disability benefits in his own best interest. (*Id.*)

The ALJ found Dr. Civish's opinion regarding Mr. F.'s mental functioning unpersuasive. (*Id.* at 20.) The ALJ found the opinion "lack[ed] internal support, as it consists primarily of checked boxes indicating either 'marked' or 'extreme' limitations in almost all areas of mental functioning." (*Id.*) The ALJ noted Dr. Civish attributed these limitations to a TBI, memory loss, and poor judgment. (*Id.*) But the ALJ found this "inconsistent with the evidence that shows that the claimant recovered quickly and well from his TBI from both a physical and mental standpoint." (*Id.* (citing *id.* at 705–07).) The ALJ found it was also "inconsistent with the

6

findings of Dr. Hardy upon consultative examination . . . as well as the treatment notes that show good mental functioning when the claimant is compliant with prescription medications and is sober from drug use." (*Id.* (citing *id.* at 1483–86, 1524–25, 1542–45, 1554–61, 1631, 1655, 1657).)

Mr. F. argues the ALJ erred in finding Dr. Civish's opinion unsupported merely because it was on a check-box form. (Opening Br. 13–14, Doc. No. 18.) Mr. F. contends Dr. Civish's opinion was supported by and consistent with his treatment notes, which the ALJ did not discuss. (*Id.* at 14.) Mr. F. also argues the ALJ erred in finding Dr. Civish's opinion inconsistent with Dr. Hardy's consultative examination. (*Id.* at 14–15.)

Mr. F. has not demonstrated any error in the ALJ's evaluation of Dr. Civish's opinion. First, the ALJ evaluated this opinion using the correct legal framework. He assessed the supportability and consistency of Dr. Civish's opinion and explained how he considered these factors, as required under the regulations. *See* 20 C.F.R. §§ 404.1520c(b)–(c), 416.920c(b)–(c). Further, as explained below, the ALJ's assessment is supported by substantial evidence.

The ALJ reasonably concluded Dr. Civish's opinion lacked internal support. The ALJ accurately noted the opinion consisted primarily of checked boxes indicating "marked" and "extreme" limitations. (*See* Tr. 463–65.) Dr. Civish provided only a brief narrative explanation for this assessment, and he did not explain how the diagnoses and symptoms listed related to the specific "marked" and "extreme" limitations assessed. (*Id.*) The ALJ evaluated Dr. Civish's explanation—attributing Mr. F.'s limitations to his TBI, memory loss, and poor judgment—and found it unpersuasive in light of contrary evidence in the record. Where Dr. Civish provided no other explanation for the numerous limitations he assessed, the ALJ did not err in finding Dr. Civish's opinion lacked adequate support.

The ALJ's findings regarding the consistency factor are also supported by substantial evidence. The ALJ reasonably concluded Dr. Civish's opinion was inconsistent with the psychological consultative examination performed by Dr. John Hardy in June 2019. (*See id.* at 1482–86.) Dr. Hardy found Mr. F. "was able to remember 3/3 unrelated items immediately and with five-minute delay" and "was able to remember and recite [three out of four] steps of a 4-step task that he was presented verbally." (*Id.* at 1483.) Mr. F.'s Wechsler Memory Scale IV testing results "show[ed] his functioning to be in the average to low average range," although his visual working memory was in the "borderline range." (*Id.* at 1485.) Dr. Hardy found, because "the Index scores show little variability[,] these results may[]be more reflective of premorbid functioning than cognitive decline due to the TBI." (*Id.*) Mr. F. reported speech difficulties related to his TBI, including difficulty finding words. (*Id.*) Dr. Hardy observed Mr. F.'s "speech speed was particularly slow," stating this was "very likely a consequence of this TBI." (*Id.*) Dr. Hardy noted Mr. F. was able to stay focused during the one-and-a-half-hour evaluation "because of the high demand characteristics of this situation and his desire to be free of the physical problems he suffers." (*Id.* at 1486.) Dr. Hardy also stated Mr. F. "appear[ed] cognitively capable of managing [disability] funds." (*Id.*)

The ALJ reasonably found the "extreme" and "marked" limitations assessed by Dr. Civish were inconsistent with Dr. Hardy's findings. Although Dr. Hardy did not offer an opinion on specific functional limitations, he performed objective testing showing Mr. F.'s memory to be generally in the average to low average range, with only one area in the borderline range, and Mr. F. also performed well on a short-term recall test. (*Id.* at 1483, 1485.) The ALJ could reasonably conclude these results were inconsistent with Dr. Civish's opinion that Mr. F. had extreme mental limitations due to poor memory. Dr. Hardy's observation that Mr. F. was able to

focus during the examination was also inconsistent with Dr. Civish's assessment of extreme limitations related to concentration. (*See id.* at 464, 1486.) And other than slow speech, Dr. Hardy did not note any other mental symptoms or limitations related to Mr. F.'s TBI. (*Id.* at 1485.) The ALJ could reasonably conclude this was inconsistent with Dr. Civish's opinion that the TBI caused extreme limitations. Finally, Dr. Hardy's finding that Mr. F. appeared capable of managing disability benefits was directly contrary to Dr. Civish's opinion on that issue. (*See id.* at 465, 1486.) Thus, the ALJ did not err in finding Dr. Civish's opinion inconsistent with Dr. Hardy's consultative examination. This was a valid reason to discount Dr. Civish's opinion.

The ALJ also reasonably found Dr. Civish's opinion inconsistent with other medical evidence showing Mr. F. recovered well from the TBI. (*See id.* at 20.) The ALJ cited a record from a follow-up appointment with Mr. F.'s treating surgeon four weeks after the assault. (*See id.* at 705–07.) The surgeon found Mr. F. had "recovered well" overall. (*Id.* at 707.) Mr. F. reported continued headaches and "occasional difficulties with memory," and his mother reported increased irritability, but "otherwise he report[ed] his cognition ha[d] recovered well." (*Id.* at 705.) On examination, the surgeon observed Mr. F. was "alert and oriented to person, place, time, [and] situation"; his "recent and remote memory [were] within normal limits"; and he had "normal attention, concentration, and recall." (*Id.* at 706.) The ALJ reasonably concluded this treatment record was inconsistent with Dr. Civish's assessment that Mr. F. had marked or extreme limitations in almost all areas of mental functioning as a result of the TBI. This was a valid reason to discount Dr. Civish's opinion.

Finally, substantial evidence supports the ALJ's finding that Dr. Civish's opinions were inconsistent with "treatment notes that show good mental functioning when the claimant is compliant with prescription medications and is sober from drug use." (*Id.* at 20.) The ALJ cited

9

numerous treatment records from the period after Mr. F. became sober in December 2019.[5] (*See id.* at 1524–25, 1542–45, 1554–61, 1631, 1655, 1657).) These records include normal mental status examinations, (*id.* at 1524, 1542, 1558, 1657), and document Mr. F.'s reported stability and improvement in psychiatric symptoms with medication, (*id.* at 1554, 1630–31). The records cited support the ALJ's conclusion that Mr. F. was not as limited as Dr. Civish opined.

Mr. F. argues Dr. Civish's opinion was supported by and consistent with Dr. Civish's treatment notes, pointing to three treatment records between November 7, 2018, and January 25, 2019. (Opening Br. 14, Doc. No. 18 (citing Tr. 526–27, 532, 718).) While the ALJ did not specifically discuss these records, he stated he considered the "entire record" in determining Mr. F.'s residual functional capacity. (Tr. 16.) "When the ALJ indicates he has considered all the evidence[,] [the court's] practice is to take the ALJ at his word." *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (unpublished) (internal quotation marks omitted). Further, Dr. Civish's treatment records merely documented the same diagnoses and symptoms as those listed on the check-box form, which the ALJ addressed in his analysis. (*See* Tr. 524–29 (noting memory loss, difficulty paying attention, poor judgment, and moderate confusion), 530–35 (same), 719–21 (same).) As discussed above, the ALJ considered Dr. Civish's opinion regarding these symptoms and their limiting affects and found it inconsistent with other substantial evidence in the record. Thus, the ALJ did not err by failing to discuss the treatment records in evaluating Dr. Civish's opinion. Although these records provide some support for Dr. Civish's opinion, the ALJ reasonably concluded the opinion was unpersuasive based on substantial contrary evidence in the record. Where substantial evidence supports the ALJ's finding, the

---

[5] The ALJ noted elsewhere in his opinion that mental health records showed Mr. F. had been sober and compliant with prescribed treatment since approximately December 2019. (Tr. 18.)

court may not reweigh the evidence or substitute its judgment for that of the ALJ. *See Langley*, 373 F.3d at 1118.

Because the ALJ applied the correct legal framework, he explained how he considered supportability and consistency, and his assessment was supported by substantial evidence, the ALJ did not err in his evaluation of Dr. Civish's opinion.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

DATED this 26th day of September, 2022.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge